Filed 6/26/26  In re Alberto R. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| In re Alberto R., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, | D086078 |
| Plaintiff and Respondent, | (Super. Ct. No. J245116) |
| v. | |
| ALBERTO R., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Marissa Bejarano, Judge.  Affirmed.

Marta I. Stanton, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Arlene A. Sevidal, Assistant Attorney General, Eric A. Swenson, Junichi P. Semitsu, and Felicity Senoski, Deputy Attorneys General, for Plaintiff and Respondent.

The People filed a petition under Welfare and Institutions Code section 602[1] alleging that Alberto R. committed two murders. (Pen. Code, § 187, subd. (a).) With respect to each murder, the People also alleged that Alberto intentionally and personally discharged a firearm within the meaning of Penal Code section 12022.53, subdivision (d). The petition also alleged that Alberto was not a proper subject for the juvenile court. (Citing § 707, subd. (a)(1) [authorizing the People to make a motion to transfer a minor from juvenile court to a court of criminal jurisdiction].)

As discussed in detail below, section 707 outlines the procedures that a juvenile court is to utilize in determining whether to transfer a minor from the juvenile court to a court of criminal jurisdiction. The statute mandates that a juvenile court shall consider various statutory criteria, including "[t]he degree of criminal sophistication exhibited by the minor" (§ 707, subd. (a)(3)(A)(i)); "[w]hether the minor can be rehabilitated prior to the expiration of the juvenile court's jurisdiction" (§ 707, subd. (a)(3)(B)(i)); "[t]he minor's previous delinquent history" (§ 707, subd. (a)(3)(C)(i)); "[s]uccess of previous attempts by the juvenile court to rehabilitate the minor" (§ 707, subd. (a)(3)(D)(i)); and "[t]he circumstances and gravity of the offense alleged in the petition to have been committed by the minor" (§ 707, subd. (a)(3)(E)(i)). The statute further provides that in order to find that a minor should be transferred from the juvenile court to a court of criminal jurisdiction, the juvenile court "shall find by clear and convincing evidence that the minor is

---

[1] Unless otherwise specified, all subsequent statutory references are to the Welfare and Institutions Code.

Section 602 provides the juvenile court with jurisdiction over certain minors who have committed a violation of the law.

not amenable to rehabilitation while under the jurisdiction of the juvenile court." (§ 707, subd. (a)(3).)

In May 2025, after the preparation of a transfer report, copious briefing, and a multi-day evidentiary hearing, the juvenile court issued a lengthy ruling that considered the statutory criteria outlined above and found that Alberto was not amenable to rehabilitation while under the jurisdiction of the juvenile court under section 707, subdivision (a)(3). Accordingly, the juvenile court granted the People's request to transfer Alberto to criminal court.

On appeal, Alberto claims that the juvenile court abused its discretion in granting the People's transfer request because there is insufficient evidence to support the juvenile court's finding that he was not amenable to rehabilitation prior to the expiration of the juvenile court's jurisdiction. We conclude there is sufficient evidence in the record to support the court's amenability finding and affirm the transfer order.

FACTUAL AND PROCEDURAL BACKGROUND

A. *The transfer report*

In February 2025, a probation officer submitted a section 707 transfer report. The report described the circumstances of the alleged offenses, noting that the two victims, aged 18 and 16, had been shot during a gang-related confrontation outside a Halloween party. One of the victims was a gang member who had been involved in the confrontation and a second victim was an "innocent bystander." Among other evidence, the report described Alberto's admissions to a jailhouse informant during a controlled operation that inculpated him as the shooter. The report also documented that Alberto was 17 years old at the time of his alleged commission of the offenses.

The transfer report also summarized Alberto's family and criminal history, physical and mental health, educational background, employment history, participation with gangs, use of alcohol and drugs, and behavior while in custody. In addition, the report summarized the results of a psychological evaluation and described interviews conducted with Alberto and his family members. The report also recounted statements made by the victims' family members pertaining to the offenses' impact on their lives.

The report also considered the five criteria set forth in section 707, subdivision (a)(3)(A) through (E) for determining whether Alberto would be amenable to rehabilitation while under the juvenile court's jurisdiction. The report expressed the view that Alberto's criminal sophistication and the circumstances and gravity of the offense warranted transfer but that the remaining criteria (i.e., possibility of rehabilitation; prior delinquency history; success of prior court attempts at rehabilitation) supported a finding that Alberto was amenable for rehabilitation by the juvenile court. Ultimately, after evaluating the five statutory criteria, the probation officer recommended that Alberto be transferred to a court of criminal jurisdiction.

B. *The People's transfer brief*

In March 2025, the People filed a brief arguing that the juvenile court should transfer Alberto to the criminal court. In their brief, the People contended that each of the five section 707, subdivision (a)(3)(A) through (E) criteria weighed in favor of transfer.

First, the People argued that Alberto had demonstrated criminal sophistication through his commission of various acts, including his use of a firearm to commit two gang-related murders and his admission to a jailhouse informant that another member of his group attempted to shoot a gun during the offenses. The People also pointed to Alberto's use of an untraceable

4

"ghost gun" to commit the alleged murders, his belief that he would likely only serve seven years in custody because he was 17 at the time of offenses, his flight from the scene, his disposal of evidence, and his efforts to avoid detection as supporting a finding that Alberto's criminal sophistication supported transfer.

The People further argued that Alberto could not be rehabilitated prior to the expiration of the juvenile court's jurisdiction given his current age of 20 and the fact that the remaining period that he could spend in the juvenile system would likely be reduced or eliminated when Alberto was sentenced to state prison on pending charges for additional crimes that he had allegedly committed after the offenses alleged in this case. With respect to Alberto's delinquency history, the People noted that Alberto's social media postings reflected a desire to commit numerous robberies and they contended that prior rehabilitative efforts by Alberto's family and school officials had not deterred Alberto from engaging in criminal behavior.

Finally, the People argued that the "gravity of the alleged offenses is beyond question," contending that Alberto had murdered two unarmed young persons in order to "build his reputation as a hardened gang member." The People further maintained that the alleged murders had left the victims' families and friends "heartbroken."

C. *Alberto's opposition brief*

Alberto filed a brief opposing the People's transfer request. In his brief, Alberto emphasized that he had retained three experts, a psychologist, a juvenile justice consultant, and a gang expert, each of whom found that Alberto was amenable to rehabilitation in the juvenile court and should not be transferred. Alberto's brief also addressed each of the relevant statutory criteria and argued that none supported transfer. Alberto maintained that

the evidence supported a finding that he was not criminally sophisticated but instead that "he was easily manipulated" and that he had acted out of both "immaturity and impulsivity" and fear that he would be "jumped and attacked" at the time of the shooting.  Alberto further argued that he could be rehabilitated while in juvenile detention, noting that he had not engaged in any in-custody incidents of violence since September 2023, that he had taken advantage of rehabilitative programming opportunities that the juvenile system had provided, and that he would be able to engage in years of future rehabilitative programming if left within the jurisdiction of the juvenile court.  Alberto additionally contended that he had " 'no prior juvenile [court] record' " and there had been "no past attempts at rehabilitation for delinquency," and that these criteria both favored maintaining his case in the juvenile court.

Finally, while Alberto acknowledged that there was "no denying the magnitude of the instant offenses," he contended that the circumstances of his offenses were distinct from another case involving "pre-planned, coordinated actions of the minors."  Alberto further stressed, "[t]he burden of proof is upon the prosecution to rebut the presumption that the minor involved is suitable for juvenile jurisdiction," and argued that the gravity and circumstances of the offense criterion weighed against transfer.

Alberto supported his brief with several exhibits, including a psychological report prepared by a psychologist, Dr. Kristina Malek; a juvenile court suitability report; a gang expert's evaluation; numerous family character letters; mental health therapy notes; a character letter from the lead facilitator and mentor of a gang prevention and youth development program; and copies of various certificates that he had obtained for his completion of rehabilitative programs while in juvenile detention.

D. *The transfer hearing*

The juvenile court held a hearing on the People's transfer request over the course of several days in March of 2025.  Among other evidence, the People presented extensive testimony pertaining to the circumstances of the offenses, as well as evidence of Alberto's social media postings pertaining to gang and criminal activity.  In addition, the People presented evidence pertaining to Alberto's participation in additional offenses after those at issue in this case, including a gang-related conspiracy offense and a violent group assault while in juvenile detention.  The People also presented the testimony of the probation officer who drafted the transfer report recommending Alberto's transfer to criminal court.

In opposition, Alberto presented the testimony of numerous witnesses, including the experts who had prepared reports lodged with his opposition brief, his therapist, and family members with whom he lived.

E. *The juvenile court's ruling*

On May 2, 2025, the juvenile court issued a written ruling granting the People's request to transfer Alberto to a court of criminal jurisdiction.  In its ruling, as discussed in detail below, the juvenile court considered each of the statutory criteria specified in section 707, subdivision (a)(3)(A) through (E), and, after weighing all of the criteria, found by clear and convincing evidence that Alberto is not amenable to rehabilitation while under the jurisdiction of the juvenile court.

F. *The appeal*

Alberto filed a notice of appeal from the juvenile court's order on the same day of its issuance.

7

DISCUSSION

*The juvenile court did not abuse its discretion in granting the People's request to transfer Alberto to criminal court*

Alberto raises a single claim on appeal. He contends that the juvenile court abused its discretion in granting the People's request to transfer "because the prosecution did not present sufficient evidence to prove by clear and convincing evidence that appellant was not amenable to rehabilitation prior to the expiration of the juvenile court's jurisdiction."

A. *Governing law and standard of review*

As noted above, "Section 707 sets forth the procedures for transferring a minor from juvenile court to criminal court. It provides that whenever a minor aged 16 years or older is alleged to have committed a felony, the prosecutor may move 'to transfer the minor from juvenile court to a court of criminal jurisdiction.' [Citation.] The prosecution bears the burden of proving that the minor should be transferred." (*In re Miguel R.* (2024) 100 Cal.App.5th 152, 164 (*Miguel R.*).)

Section 707, subdivision (a)(3) provides, "In order to find that the minor should be transferred to a court of criminal jurisdiction, the court shall find by clear and convincing evidence that the minor is not amenable to rehabilitation while under the jurisdiction of the juvenile court." Section 707, subdivision (a)(3) further provides that, in making its transfer decision, the juvenile court shall consider five criteria specified in subparagraphs (A) through (E) of the statute quoted in the introduction of this opinion and discussed in detail below.

"We review the juvenile court's ruling on a transfer motion for abuse of discretion. . . . The juvenile court's findings with respect to each of section 707's five criteria are findings of fact reviewed for substantial evidence. [Citation.] In conducting substantial evidence review, we draw all reasonable

8

inferences in support of the court's findings. [Citation.] [¶] Likewise, we review for substantial evidence the juvenile court's ultimate finding 'that the minor is not amenable to rehabilitation while under the jurisdiction of the juvenile court.' [Citation.] Because the juvenile court must make that finding by clear and convincing evidence, we 'determine whether the record, viewed as a whole, contains substantial evidence from which a reasonable trier of fact could have made the finding of high probability demanded by' the clear and convincing evidence standard." (*Miguel R., supra*, 100 Cal.App.5th at p. 165.)

B. *Application*

Alberto raises several arguments in support of his claim that the record contains insufficient evidence to support the juvenile court's ruling, but none is persuasive. We observe at the outset that Alberto's arguments each amount to a request for this court to reweigh the evidence presented in the juvenile court and/or substitute our discretion for that of the juvenile court. Since, however, in reviewing a ruling on a transfer request, "we do not reweigh the evidence and we do not substitute our discretion for the discretion exercised by the [juvenile] court," all of Alberto's arguments fail. (See *In re J.S.* (2024) 105 Cal.App.5th 205, 211 (*J.S.*).) We address each of Alberto's specific arguments below.

First, Alberto contends that the juvenile court "should have given more weight" to the section 707, subdivision (a)(3)(A) through (E) criteria that the court found supported amenability, and less weight to those criteria that the court found did not support amenability. The statutory scheme "says nothing about the relative weight to be given to any of the criteria." (*Miguel R., supra*, 100 Cal.App.5th at p. 166.) Accordingly, we reject Alberto's argument that the juvenile court erred by failing to "give[] more

weight" to certain statutory criteria. (See *ibid.* [rejecting argument that juvenile court should have given greater weight to one of the five section 707, subd. (a)(3)(A)-(E) criteria].)

Next, Alberto claims that the juvenile court "failed to properly weigh the expert evidence and dismissed the expert's conclusions." The juvenile court was authorized, and indeed entrusted, to weigh the experts' opinions and consider their value. (See *J.S., supra*, 105 Cal.App.5th at p. 212 ["[T]he juvenile court was not required to credit the testimony of the defense experts. As trier of fact, it was free to discredit such testimony. Phrased otherwise, any trial court is not bound by an expert's testimony and opinion."].) And, here, the juvenile court's 17-page transfer order reflects careful consideration of the experts' opinions and reasonably explains those aspects of the expert testimony and evidence that the juvenile court found persuasive and those aspects that the court did not. For example, while Alberto argues that "Dr. Malek prepared a comprehensive and compelling report," the juvenile court reasonably disagreed with portions of that report as unsupported by the court's view of the evidence and the court explained in detail its reasons for doing so in its ruling.

In addition, none of Alberto's specific arguments with respect to the section 707, subdivision (a)(3)(A) through (E) criteria is persuasive. With respect to the first criterion, pertaining to "[t]he degree of criminal sophistication exhibited by the minor," the juvenile court reasonably found that this criterion favored transfer. (§ 707, subd. (a)(3)(A)(i).) The juvenile court reasoned that Alberto's conduct before, during, and after the alleged offenses supported such a finding. The court explained that Alberto had been associating with gang members, had obtained a firearm in the days before the shooting, and had carried a loaded firearm with him to the party on the

10

night of the shooting while anticipating trouble. The court also observed that, during the incident, Alberto, who had some experience with firearms, "not at the urging of anyone," and "not in imminent danger," shot and killed two people, before firing a third shot. The juvenile court also noted that Alberto described himself as feeling "hyped" after the shooting, and found that Alberto participated in the wiping down and disposal of the firearm he used in the shooting, and that he concocted a fake story in the event certain incriminating evidence were to be discovered.

The juvenile court also discussed Dr. Malek's opinion that this criterion did not support transfer but explained that it "did not find Dr. Malek's testimony persuasive in part, because of her interpretation of the evidence." Pointing to the evidence surrounding the offenses discussed above, the juvenile court reasonably elaborated, "The credible evidence before the court is that the circumstances leading up to the murder of the victims do not support that Alberto was pressured to commit the offenses."

In addition, the juvenile court considered Alberto's age, upbringing, and the social and family environment in which he lived. The court specifically referenced the economic difficulties that Alberto faced and that "he did not have a father in his life." The juvenile court also accurately noted that Alberto "grew up in a large loving family," and that he had "no diagnosed physical, mental or emotional needs." After considering the totality of the evidence, as well as the statutory factors underlying the criminal sophistication criterion (see § 707, subd. (a)(3)(A)(i)-(ii)), the juvenile court reasonably determined that this criterion weighed in favor of a finding that Alberto was not amenable to rehabilitation while under the jurisdiction of the juvenile court.

11

Alberto, in turn, points to evidence that he contends would have supported an opposite finding, namely that he was "immature [and] impetuous," and that he "failed to appreciate risks and consequences of his behavior, he was manipulated by his peers, he suffered childhood trauma, and he was a scared 17-year-old." Yet, the fact "there may have also been substantial evidence to support a different conclusion" from that reached by the juvenile court does not demonstrate a lack of substantial evidence for the finding that the juvenile court did reach. (*Kevin P. v. Superior Court* (2020) 57 Cal.App.5th 173, 190.) In short, we are not persuaded by Alberto's contention that reversal is required because "[t]he juvenile court should have given more weight to . . . findings," supportive of a determination that Alberto lacked criminal sophistication.

Next, Alberto argues that the juvenile court "should have given greater weight" to the court's finding that Alberto could "be rehabilitated prior to the expiration of the juvenile court's jurisdiction." (§ 707, subd. (a)(3)(B).) According to Alberto, the juvenile court was required to give greater weight to this finding, because this criterion purportedly "best demonstrates the ultimate question of whether appellant is amenable to rehabilitation while under the jurisdiction of the juvenile court." We are not persuaded. While the juvenile court reasonably found that this criterion supported transfer, the court did not err in failing to accord greater weight to it in determining whether to grant the People's transfer request for the following reasons.

As the *Miguel R.* court explained, "the ultimate determination of whether 'the minor is not amenable to rehabilitation while under the jurisdiction of the juvenile court' (§ 707[, subd.] (a)(3)) is not the same as the second criterion." (*Miguel R., supra,* 100 Cal.App.5th at p. 166.) While the "focus of the second criterion is whether there is enough time to rehabilitate

12

the minor while the minor is still eligible to remain under juvenile court jurisdiction," the ultimate finding of amenability requires a "global assessment of the minor's suitability to rehabilitation within the juvenile court system, and not just a comparison of the time needed with the time remaining." (*Id*. at p. 167.) In addition, as the *Miguel R.* court noted in rejecting an argument similar to that posed by Alberto, "[b]ecause the juvenile court is not required to give greater weight to the second criterion or to deny the transfer motion if that criterion does not weigh in favor of transfer, we conclude that the juvenile court did not err by not according the second criterion greater weight than the other criteria." (*Id*. at p. 168.)

With respect to the next criterion pertaining to "[t]he minor's previous delinquent history" (§ 707, subd. (a)(3)(C)(i)), Alberto again asks us to reweigh the evidence, contending that the juvenile court "should have given more weight to the fact that this was appellant's first petition and first arrest and Dr. Malek's expert testimony that this factor weighs against transfer to adult court." We are not persuaded. To begin with, case law establishes that, in considering this criterion, a juvenile court is not limited to "conduct taking place before the alleged offense," or "conduct resulting in a delinquency petition." (*D.C. v. Superior Court* (2021) 71 Cal.App.5th 441, 451; accord § 707, subd. (a)(3)(B)(ii) ["When evaluating the criterion specified in clause (i) [(i.e. "[t]he minor's previous delinquent history"], the juvenile court shall give weight to *any relevant factor*" (italics added)].)

Thus, the juvenile court reasonably considered that Alberto had engaged in some negative conduct while in high school, which included both threatening and engaging in violence, even if such conduct had not resulted in a delinquency petition. The juvenile court also reasonably considered the fact that Alberto's "social media evidence[d] an increase in delinquent

13

history" following the alleged murders, including that Alberto's postings both suggested that he was a gang member and expressed a desire to commit several specific robberies. And, perhaps most significantly, the juvenile court reasonably noted that Alberto had been charged as an adult with numerous crimes allegedly committed on three separate occasions after the murders in this case. Those crimes included gang-related crimes, sex offenses, and a group assault that Alberto allegedly participated in while in juvenile custody that resulted in the victim suffering a broken jaw.

The juvenile court also reasonably discounted the opinions of Dr. Malek and the probation officer that the previous-delinquency factor weighed in favor of amenability. As the juvenile court explained, the probation officer was not aware of certain evidence related to this criterion supportive of transfer. In addition, the juvenile court reasonably found that Dr. Malek's discounting of the significance of some of Alberto's delinquency history described above to be "unpersuasive."

While Alberto asserts that "California courts analyzing this factor have found that more significant prior contacts with the juvenile justice system than appellant's weigh[ed] against transfer to adult court," as discussed above, the juvenile court was not limited to considering Alberto's prior contacts with the juvenile court system in analyzing this criterion. In any event, such comparisons are of little value in determining whether there is substantial evidence to support a court's finding given the totality of the evidence in any particular case. In sum, when considered in toto, the juvenile court reasonably determined that Alberto's prior delinquency supported transfer.

Alberto next asserts that the juvenile court should have given "greater weight" to its finding that the "[s]uccess of previous attempts by the juvenile

14

court to rehabilitate the minor" supported a finding of amenability. (§ 707, subd. (a)(3)(D).) Again, however, it was the juvenile court's role to weigh the various statutory criteria and determine their relative importance with respect to the court's overall determination of whether to transfer Alberto. (*Miguel R., supra*, 100 Cal.App.5th at p. 167.) Further, while Alberto notes that "appellant had not been given any prior opportunity to rehabilitate and show his potential for growth and maturity," the juvenile court expressly acknowledged that there had "not been previous attempts by the juvenile court to rehabilitate Alberto" and it was on this basis that the juvenile court found that this factor supported amenability. In sum, the court properly summarized the lack of prior rehabilitative efforts by the juvenile court and Alberto has not demonstrated the juvenile court committed any error in failing to give this factor greater weight.

With respect to the "circumstances and gravity of the offense" (§ 707, subd. (a)(3)(E)), the juvenile court reasonably determined that the evidence surrounding Alberto's personal commission of two gang-related murders and the harm that his actions caused supported transfer. While Alberto points out that Dr. Malek concluded that Alberto was "impulsive and immature" and that he was a "follower," the juvenile court considered both Alberto's "mental state and his mental and emotional development," as well as Dr. Malek's opinion. Nevertheless, the juvenile court reasonably determined the state of the evidence concerning the offenses supported a finding that their circumstances and gravity supported transfer.

Finally, Alberto contends that "[a] review of the totality of the evidence indicates appellant is amenable to rehabilitation while under the jurisdiction of the juvenile court." As we stated above, we do not "reweigh the evidence and we do not substitute our discretion for the discretion exercised by the

[juvenile] court." (*J.S., supra*, 105 Cal.App.5th at p. 211.)  We have carefully reviewed the entirety of the record and conclude there is sufficient evidence on which the juvenile court could reasonably "find by clear and convincing evidence that [Alberto] is not amenable to rehabilitation while under the jurisdiction of the juvenile court."  (§ 707, subd. (a)(3).)[2]

DISPOSITION

The May 2, 2025 order transferring Alberto from juvenile court to a court of criminal jurisdiction is affirmed.

BUCHANAN, J.

WE CONCUR:

DATO, Acting P. J.

RUBIN, J.

---

[2]     In addition to the arguments presented in his brief, Alberto filed a notice of new authority alerting this court to the recent decision, *In re O.F.* (2026) 119 Cal.App.5th 133.  In *In re O.F.*, the Court of Appeal concluded that the November 2022 transfer order at issue in that case had to "be reversed in light of subsequent retroactive changes in the law that have renewed the focus of section 707's inquiry on a minor's amenability to rehabilitation."  (*Id.* at p. 140.)  Alberto makes no claim that there have been retroactive changes in the law requiring reversal of the May 2025 transfer order at issue in this case.

16